Vincent Henry FLOWERS, Appellant,

v.

The STATE of Texas.

No. PD–1081–06.

Court of Criminal Appeals of Texas.

April 18, 2007.

Dawn A. Moore, Denton, for Appellant.

Bruce Isaacks, Criminal District Atty., Denton, Matthew Paul, State's Atty., Austin, for State.

## *OPINION*

COCHRAN, J., delivered the opinion of the Court, in which KELLER, P.J., WOMACK, KEASLER, HERVEY and HOLCOMB, JJ., joined.

During the punishment phase of appellant's driving while intoxicated (DWI) trial, the State offered certified copies of (1) appellant's Texas driver's license record, and (2) a Dallas County computer-generated printout of appellant's conviction record, to establish that appellant had a prior DWI conviction in Dallas County and thus prove its enhancement allegation. Based upon this evidence, the judge found the enhancement paragraph true. The court of appeals held that this evidence was le-

gally and factually sufficient to prove the enhancement paragraph.[1]

We granted this petition for discretionary review to determine if the court of appeals erred "in holding a computer printout to be the functional equivalent of a judgment and sentence constituting sufficient proof beyond a reasonable doubt of a valid final conviction." Regardless of whether a computer print-out is "the functional equivalent" of a judgment for all purposes, we affirm the court of appeals because the evidence was sufficient to prove, beyond a reasonable doubt, that appellant had a prior DWI conviction as alleged in the enhancement paragraph.

## I.

Appellant was charged with DWI in Denton County. The information included an enhancement paragraph alleging a prior DWI conviction, Cause No. MB9539105, in Dallas County on August 18, 1995. Appellant pled "not guilty" to the charged offense and "not true" to the enhancement paragraph. A Denton County jury convicted appellant of DWI, and appellant elected to be sentenced by the judge.

Before trial, the Denton County District Attorney's Office sent a letter to the Dallas County Clerk's Office requesting certified copies of the judgment, information, revocation orders, and fingerprints for

Defendant: Vincent Henry Flowers
Date of Birth: 12/15/1970
Offense: DWI
Cause: MB9539105.

The Dallas County Clerk's Office wrote a letter in response, stating that the file was "missing" from its off-site warehouse facility. In lieu of the requested documents, the clerk's office sent a certified computer printout of appellant's conviction record. The prosecutor also requested and received a certified copy of appellant's driver's license record from the Texas Department of Public Safety.

During the sentencing hearing, the State offered appellant's Texas driver's license record as State's Exhibit 10. It was admitted without objection.[2] Exhibit 10 was a six-page document and included appellant's name, sex, date of birth, age, address, and driver's license number, as well as a copy of appellant's driver's license with his photograph. It also contained the following entry: "Date of offense 08–02–95 for DRIVING WHILE INTOXICATED in DALLAS County, Texas. Convicted on 8–18–95 at County Court, Docket Number MB9539105H."[3]

The State then offered State's Exhibit 11–the Dallas County computer printout of appellant's conviction record. Appellant's counsel objected, stating that the exhibit was irrelevant because, "there's not a judgment here. It's a computer printout. And I'd argue that since it's a computer printout, not a judgment, it wouldn't be

1. *Flowers v. State*, No. 2–05–146–CR, 2006 Tex.App. LEXIS 4352, *8, 2006 WL 1351490, at *1 (Tex. App.–Fort Worth 2006) (not designated for publication).

2. The State offered its Exhibit 10 through Danny Sustaire, an investigator for the Denton County District Attorney's Office. Mr. Sustaire testified that these documents were certified copies of originals kept by the Texas Department of Public Safety and had been

furnished to the Denton County District Attorney's Office upon its request.

3. The Docket Number "MB9539105H" in the DPS driver's license record is substantially, though not precisely, the same as the Cause Number "MB9539105" listed in the Dallas County computer printout. *See Human v. State*, 749 S.W.2d 832, 838–39 (Tex.Crim.App. 1988) (op. on reh'g) (noting that cause numbers F80–11997N and F–80–11997–MN were substantially the same).

relevant in this particular case." The defense further argued that without a fingerprint on the computer printout "it's tentative as to whether or not the State can prove that this particular document refers to a person who is one and the same with my client." The judge overruled the objection and admitted State's Exhibit 11.

State's Exhibit 11 contains appellant's name, date of birth, address, social security number, date of arrest, charged offense, finding of guilt, sentence, and the judicial case identification number. All of this information matches the information contained in appellant's Texas driver's license record. Danny Sustaire, a Denton County District Attorney's Office investigator, testified that State's Exhibit 11 was a certified copy of a conviction record. He further testified that the personal identifiers in State's Exhibit 11 matched those in State's Exhibit 10, and he stated that both exhibits referred to the same Vincent Henry Flowers.

Based on the totality of the State's evidence, the trial judge found the enhancement paragraph relating to the 1995 Dallas County DWI conviction to be true. He sentenced appellant to 270 days in Denton County Jail and assessed a fine of $2,000.

Appellant argued on appeal that the trial court improperly admitted State's Exhibit 11, which he asserted was irrelevant "because it is not a judgment, bears no con-

nection to him, and proves nothing." [4] He argued alternatively that, even if State's Exhibit 11 was properly admitted, the evidence was both legally and factually insufficient to prove his prior conviction of the 1995 DWI.

The Court of Appeals held that the computer printout contained sufficient information and indicia of reliability to constitute the functional equivalent of a judgment and sentence, and therefore the trial court did not err in admitting State's Exhibit 11.[5] The Court of Appeals further found that this evidence, combined with Exhibit 10, was sufficient to link appellant to the 1995 DWI.[6]

## II.

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction.[7] No specific document or mode of proof is required to prove these two elements. There is no "best evidence" rule in Texas that requires that the fact of a prior conviction be proven with any document, much less any specific document. While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways,[8] including (1) the defen-

---

4. *Flowers*, 2006 Tex.App. LEXIS 4352 at *2, 2006 WL 1351490, at *1 .

5. *Id.* 2006 Tex.App. LEXIS 4352 at *5, 2006 WL 1351490, at *2 ("The printout states the defendant's name, the offense charged, and the date of commission; shows that he was found guilty of and sentenced for the offense; and gives the specifics of the sentence and the amount of time served. Further, the printout is properly authenticated by the Dallas County Clerk in accordance with evidentiary rule 902(4).").

6. *Id.*

7. *See Banks v. State*, 158 S.W.3d 649, 651–52 (Tex.App.—Houston [14th Dist.] 2005, pet. ref'd) (citing *Beck v. State*, 719 S.W.2d 205, 210 (Tex.Crim.App.1986).

8. *See Littles v. State*, 726 S.W.2d 26, 32 (Tex. Crim.App.1987) ("To the extent that ... any other case can be read as holding that there are *exclusive* manners of proof of a defendant's identity as to prior felonies used for enhancement, they are overruled. Each case is to be judged on its own individual merits. This is not to say that there are not preferred methods of proving identity with respect to

dant's admission or stipulation,[9] (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person,[10] or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted.[11] Just as there is more than one way to skin a cat, there is more than one way to prove a prior conviction.

Texas substantive law does not require that the fact of a prior conviction be proven in any specific manner. Article 37.07 of the Code of Criminal Procedure permits proof of a defendant's "prior criminal record," but it does not require the production of a certified judgment to prove that prior criminal record. Any type of evidence, documentary or testimonial, might suffice. Similarly, Chapter 12 of the Penal Code deals with enhanced penalties for repeat or habitual offenders, but it does not require that the fact of a prior conviction be established in any particular manner or with any specific document.

The same might be said about proving up the existence of a marriage: one perfectly permissible method of showing that John and Susan are married is to produce a certified copy of their marriage license. If the substantive law requires the produc-tion of a marriage license, then this is the only method that may be used, but if the substantive law merely requires proof of the fact that John and Susan are married, then any type of evidence, documentary or testimonial, might suffice.

If a certified copy of a final judgment were the only means to prove that a defendant had been convicted of a prior offense, the defendant would receive a windfall if this document were destroyed, lost, or otherwise unavailable.[12] In such situations, a defendant's prior criminal history slate would be essentially wiped clean if the State could not prove prior offenses through other evidence, including other documentary evidence.

Further, in this modern era of computer-stored data, electronic files, and "paperless" court records, the day may come in which written judgments are largely obsolete. For this reason, Rule 902 of the Texas Rules of Evidence explicitly allows for the self-authentication of certified copies of public records, "including data compilations in any form certified as correct" by their custodian.[13] A computer-generated compilation of information setting out the specifics of a criminal conviction that is certified as correct by the county or district clerk of the court in which the convic-

---

enhancement allegations. But, where as in *the instant case, the proof, though unortho-dox,* was clearly sufficient, no error will be found.") (emphasis in original).

9. See *Bryant v. State,* 187 S.W.3d 397, 401 (Tex.Crim.App.2005).

10. See *Jones v. State,* 500 S.W.2d 661, 664–65 (Tex.Crim.App.1973) (testimony by prosecuting attorney that he knew defendant and that he was the same person who had been previously convicted in his presence sufficient).

11. See *Doby v. State,* 454 S.W.2d 411, 413–14 (Tex.Crim.App.1970).

12. It is not unheard of for court records to *disappear. In light of the devastation caused* by recent disasters such as Hurricanes Katrina and Rita, it is not far-fetched to imagine a County Clerk's Office being destroyed and the original court records, including written judgments, being lost forever. See Brenna G. Nava, Comment, *Hurricane Katrina: The Duties and Responsibilities of an Attorney,* 37 ST. MARY'S L.J. 1153, 1159 (2006) (discussing different natural disasters and the effect they had on the judicial system).

13. TEX. R. EVID. 902(4).

tion was obtained is admissible under Rule 902.[14]

As this Court stated in *Human v. State:*
[O]rdinarily the proof that is adduced to establish that the defendant on trial is one and the same person that is named in an alleged prior criminal conviction or convictions closely resembles a jigsaw puzzle. The pieces standing alone usually have little meaning. However, when the pieces are fitted together, they usually form the picture of the person who committed that alleged prior conviction or convictions.[15]

The trier of fact fits the pieces of the jigsaw puzzle together and weighs the credibility of each piece.[16] Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant, the trier of fact determines if these pieces fit together sufficiently to complete the puzzle. The trier of fact looks at the totality of the evidence admitted to determine 1) whether there was a previous conviction, and 2) whether the defendant was the person convicted. If these two elements can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction.

## III.

In this case, the State offered a certified copy of appellant's driver's license record and the computer printout from Dallas County to complete the jigsaw puzzle and prove appellant's prior DWI conviction. Appellant's sole complaint is that the computer printout, State's Exhibit 11, is not a "real" judgment that contains all of the information that a "real" judgment must contain under article 42.01 of the Code of Criminal Procedure.[17] Appellant relies primarily on two court of appeals cases: *Gentile v. State*[18] and *Blank v. State.*[19]

In *Gentile* the State offered only a copy of the defendant's certified driver's license

---

**14.** *Id.* Although this Court had held, in *Langston v. State*, 776 S.W.2d 586, 587 (Tex.Crim. App.1989), that "[i]n order to be considered as evidence of a final conviction, a pen packet must contain a judgment and sentence, properly certified[,]" that case was decided without reference to the Texas Rules of Evidence. Furthermore, *Langston* dealt with the admission of a "pen packet," a document compiled by a prison official based upon other primary documentation that he has received from the clerk of the convicting court. The compiler and custodian of the "pen packet" is not the custodian of the original judgment or data compilation relating to a defendant's prior conviction. The pen packet custodian cannot attest to the correctness of the original documents, he can attest only that the pen packet contains correct copies of documents that he received from some other source.

**15.** *Human v. State*, 749 S.W.2d 832, 835–36 (Tex.Crim.App.1988) (op. on reh'g).

**16.** *See generally Margraves v. State*, 34 S.W.3d 912, 918–19 (Tex.Crim.App.2000).

**17.** Article 42.01 defines the requirements of a judgment as "a written declaration of the court signed by the trial judge and entered of record showing the conviction or acquittal of the defendant." Article 42.01 then lists twenty-nine different items that shall be reflected in a judgment, including such items as the reflection that a defendant was represented by counsel or waived such representation, the defendant's thumbprint, any jury waiver, a defendant's plea, and so forth. Appellant argues that, because the computer-generated conviction record did not contain the trial judge's signature, appellant's thumbprint, or various other items listed in article 42.01, State's Exhibit 11, it cannot be either a real judgment or the functional equivalent thereof.

**18.** 848 S.W.2d 359 (Tex.App.—Austin 1993, no pet.).

**19.** 172 S.W.3d 673 (Tex.App.—San Antonio 2005, no pet.).

report to prove the existence of a prior conviction. The Austin Court of Appeals correctly held that this evidence was insufficient to satisfy the State's burden of proof because the certified driving record proved only "that the [Texas Department of Public Safety] has received the listed notices of conviction."[20] That is, all of the information concerning the prior conviction was from a second-hand source, not the horse's mouth. The present case would be analogous to that in *Gentile* if the State had offered only Exhibit 10, appellant's Texas driver's license record kept by DPS. But it did not do so. It also offered Exhibit 11, which is a certified computer data compilation of information from the Dallas County Clerk, the custodian of the original judgment for the prior DWI conviction.

In *Blank*, the State offered a printout "case synopsis"[21] from Illinois to prove a prior conviction for enhancement purposes. The San Antonio Court of Appeals held that "nothing in the record supports the State's contention that the synopsis represents a judgment of conviction."[22] The court of appeals stated that the computer-generated information was insufficient to show that the defendant actually had a prior DWI conviction from Illinois.[23] But, as the court of appeals explicitly noted in

*Blank*, a prior conviction need not be proven by a written judgment. It stated,

> A prior conviction may be proven by certified copies of a judgment and sentence and authenticated copies of records from the Texas Department of Corrections or other correctional institution, including fingerprints, supported by expert testimony matching them to the defendant. However, this is not the only method by which the State may prove a prior conviction. The State also may offer: (1) testimony from a witness who personally knows the defendant and the fact of his prior conviction; (2) the defendant's stipulations or judicial admissions; or (3) the defendant's photograph in a penitentiary packet or other official record.[24]

As stated previously, the important issue is not whether State's Exhibit 11 represents a judgment of conviction or its functional equivalent under article 42.01, but whether a reasonable trier of fact could view State's Exhibits 10 and 11 and find beyond a reasonable doubt that 1) the alleged prior DWI conviction existed and 2) this conviction is linked to appellant.

■ In this case, the trial judge had before him a certified copy of a computer printout from the Dallas County Clerk set-

---

**20.** 848 S.W.2d at 360. The situation in *Gentile* was similar to that in *Langston,* in that the custodian of the exhibit was not the custodian of the original document, but simply received his information from a separate source.

**21.** "Case Synopsis" from Illinois cryptically read as follows:

| CNT | DATE | CHARGE |
|---|---|---|
| 1 | 02/21/1993 | DRIVING UNDER INFL OF ALCOHOL |
| | 07/12/1993 | GUILTY BENCH TRIAL |
| | 07/12/1993 | FINE |
| 1 | 02/21/1993 | DRVG UNDER INFLU OF ALCOHOL |
| | 11/10/1993 | TERMINATED S BENCH TRIAL |

*Blank,* 172 S.W.3d at 675.

**22.** *Id.* at 675–76.

**23.** *Id.* In *Blank,* the "synopsis" document was simply too bare-bones.

**24.** *Id.* (citations omitted).

ting out an August 18, 1995, conviction for DWI in Dallas County for an offense committed on August 2, 1995. It showed that the "Vincent Henry Flowers" in that numbered case was sentenced to 45 days in jail. It set out the date of birth, address, social security number, and other personal descriptors for that "Vincent Henry Flowers." State's Exhibit 10, the unobjected-to official Texas driver's license record for appellant, set out the same name, "Vincent Henry Flowers," with the same date of birth, address, personal descriptors, and matching information concerning the 1995 Dallas County DWI conviction. This driver's license record also had a picture of "Vincent Henry Flowers" which the trial judge could use to compare to the person standing before him. Although it is conceivable that there are two men named Vincent Henry Flowers with the same date of birth, living at the same address, with the same personal descriptors, who look exactly the same, it is not likely.

Although State's Exhibit 11 might not be, for all purposes, the "functional equivalent" of a judgment as defined in article 42.01, this exhibit was sufficient, when considered in conjunction with Exhibit 10, to prove beyond a reasonable doubt the existence of appellant's 1995 DWI conviction from Dallas County.

In this case, the trial judge, as a reasonable trier of fact, found that the totality of the State's evidence proved the enhancement paragraph true beyond a reasonable doubt. We hold that the evidence is legally sufficient to support his finding, and we therefore affirm the judgment of the court of appeals.

JOHNSON, J., filed a concurring opinion, in which PRICE, J., joined.

MEYERS, J., not participating.

JOHNSON, J.,concurring in which PRICE, J., joined.

The times, they are a changin', and the court system must change also. But we must change with caution, lest the changes produce unfortunate, potentially unrectifiable, results. And if the state may now use a wider assortment of sources to prove alleged prior convictions, a defendant must also be allowed to use a wider assortment of sources to disprove alleged prior convictions.

When allowing use of non-traditional resources, courts must exercise great care in assuring that the defendant is sufficiently connected to the prior conviction.[1] Assuring that a sufficient connection exists requires at least two things: 1) enough information to establish that the conviction can be connected to its proper owner; and 2) the information is sufficiently corroborated. More information makes the connection more reliable. Clearly, we must not depend only on a name or even a name and a birth date. An inexhaustive list of factors that might be considered includes: full name, date of birth, Social Security number, what the prior offense was, the place and date of the prior offense, the date of conviction, testimony about the prior conviction from a corrections, parole, or probation officer, or the prosecutor of the prior conviction. However the information is produced, it must sufficiently connect the defendant to the prior offense.

1. Recently, in a Texas county, two young men, sharing the same full name and the same birth date and birth year, were arrested for the same charged offense on the same day. They hired different lawyers, who became confused by communications from court personnel about court dates that did not comport with their own records. The confusion was ended when someone discovered the odd coincidences of the arrests. Such mixups are certainly rare, but they obviously are possible.

Another crucial issue is corroboration. Some agencies are more diligent about accuracy and completeness than others. Variances in relevant data should not be ignored; they should be investigated. And finally, corroboration must not be a single agency speaking through two other agencies. For example, the state produces a driving record and a criminal history printout from TCIC that was obtained from the county of conviction. The same relevant information in each is the same. The problem is that, for both exhibits, the source is probably the same: the Department of Public Safety. The records may be, and probably are, correct, but they should not be seen as corroborating each other; it is one agency speaking from two mouths.

I concur in the judgment of the Court.